**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **PETESKI PRODUCTIONS, INC.** | § | |
| | § | **CASE NO. 5:17-cv-122-JRG** |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **LEAH ROTHMAN and JOHN or JANE** | § | **JURY DEMANDED** |
| **DOE,** | § | |
| | § | |
| *Defendants*. | § | |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**</u>

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**

18751410v.14

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL BACKGROUND.....................................................................4

III.   RESPONSE TO ROTHMAN'S STATEMENT OF ISSUES ............................4

IV.    SUMMARY JUDGMENT STANDARD............................................................5

V.     PLAINTIFF'S RESPONSE TO ROTHMAN'S STATEMENT OF
       UNDISPUTED MATERIAL FACTS ...............................................................6

VI.    ADDITIONAL EVIDENCE REFUTING DEFENDANT'S SUMMARY
       JUDGMENT MOTION .....................................................................................8

VII.   ARGUMENT AND AUTHORITY ..................................................................15

       A.     Rothman's claim of innocence is irrelevant, and inaccurate. ................15

       B.     Rothman is not entitled to rely on the equitable doctrine of fair use as a
              defense to her admitted copyright infringement. ....................................16

       C.     Each factor of the fact-intensive fair use analysis weighs sufficiently in
              Plaintiff's favor to warrant denial of the Motion. ..................................19

              1.     The character and purpose of Rothman's use of the Work do not
                     support the defense of fair use under the present facts. ............................20

              2.     The nature of the copyrighted Work is creative and expressive, not
                     factual, and its unpublished nature weighs strongly against fair use.........25

              3.     Rothman unfairly copied the entirety of the Work. ..................................27

              4.     Plaintiff's evidence of an effect upon the potential market for the
                     Work precludes granting Rothman's Motion. ...........................................28

VIII.  CONCLUSION.................................................................................................29

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on
Defendant's Fair Use Affirmative Defense**                                      **Page i**

18751410v.14

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .............................................................................................21

*Am. Geophysical Union v. Texaco, Inc.*,
802 F. Supp. 1 (S.D.N.Y. 1992) ...........................................................................................26

*Am. Inst. of Physics v. Winstead PC*,
No. 3:12-cv-1230-M, 2013 WL 6242843 (N.D. Tex. Dec. 3, 2013) ......................................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..............................................................................................................5

*Atari Games Corp v. Nintendo of Am. Inc.*,
975 F.2d 832 (Fed. Cir. 1992) ...................................................................................1, 17, 18

*Berry v. Dillon*,
291 F. Appx. 792 (9th Cir. 2008) .........................................................................................23

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ................................................................................................... *passim*

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F.3d 624 (7th Cir. 2003) ...............................................................................................26

*Coleman v. ESPN, Inc.*,
764 F. Supp. 290 (S.D.N.Y. 1991) .........................................................................................3

*DC Comics, Inc. v. Reel Fantasy, Inc.*,
696 F.2d 24 (2d Cir. 1982) .....................................................................................................3

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) .............................................................................................28

*DSC Comms. Corp v. DGI Techs, Inc.*,
898 F. Supp. 1183 (N.D. Tex. 1995), *aff'd* 81 F.3d 597 (5th Cir. 1996).................1, 17, 18, 19

*Eng'g Dynamics, Inc. v Structural Software, Inc.*,
26 F.3d 1335 (5th Cir. 1994) ...............................................................................................15

*Equals Three, LLC v. Jukin Media, Inc.*,
139 F. Supp. 3d 1094 (C.D. Cal. 2015) ................................................................................25

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE** **PAGE ii**

18751410v.14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)...............................................................................3

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
    807 F.2d 1110 (2d Cir. 1986)...............................................................15

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) .......................................................1, 4, 5

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)....................................................................... *passim*

*Infinity Broad Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998)..............................................................3, 26

*Iowa State Univ. Research Found., Inc. v. Am. Broad Cos. Inc.*,
    621 F.2d 57 (2d Cir. 1980)...............................................................1, 16

*Jartech, Inc. v. Clancy*,
    666 F.2d 403 (9th Cir. 1982) ..............................................................23

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2007) ..............................................................25

*Levingston v. Earle*,
    No. CV-12-08165-PCT-JAT, 2014 WL 1246369 (D. Ariz. March 26, 2014) .......................23

*Lish v. Harper's Magazine Foundation*,
    807 F.Supp. 1090 (S.D.N.Y. 1992).......................................................20

*MCA, Inc. v. Wilson*,
    677 F.2d 180 (2d Cir. 1981)................................................................16

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ........................................................20, 27

*Monroe v. James*,
    No. 9:06-CV-0859, 2008 WL 508905 (N.D.N.Y February 21, 2008) ...................................23

*Nunez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000)..................................................................20

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004)................................................................20

*Psihoyos v. Nat'l Exam'r*,
    No. 97 Civ. 7624, 1998 U.S. Dist. LEXIS 9192 (S.D.N.Y. June 22, 1998)...........................26

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                              **PAGE iii**

18751410v.14

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) ...................................................................26

*Religious Technology Center v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) ..............................................................................24

*Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*,
   503 F. Supp. 1137 (S.D.N.Y. 1980).....................................................................20

*Salinger v. Random House, Inc.*,
   811 F.2d 90 (2d Cir. 1987)...................................................................................28

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
   627 F. Supp. 2d 123 (S.D.N.Y. 2007)..................................................................19

*Shell v. Devries*,
   No. Civ. 06-CV-00318-REB, 2007 WL 324592 (D. Colo. Jan. 31, 2007).....................22, 23

*Smith v. Michels Corp.*,
   No. 2:13-CV-00185-JRG, 2014 U.S. Dist. LEXIS (E.D. Tex. Feb. 24, 2014)........................5

*Terrebone Parish Sch. Bd v. Mobil Oil Corp.*,
   310 F.3d 870 (5th Cir. 2002) ............................................................................1, 5

*Ty, Inc. v. Publ'ns Int'l*,
   292 F.3d 512 (7th Cir. 2002) ...............................................................................5

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989)...............................................................................21

*World Wrestling Fed'n Entm't, Inc. v. Bozell*,
   142 F. Supp. 2d 514 (S.D.N.Y. 2001)...................................................................20

## STATUTES

17 U.S.C. §107.....................................................................................19, 25, 26, 28

17 U.S.C. §501(a) ...................................................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ................................................................................................5

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                              **PAGE iv**

18751410v.14

Plaintiff Peteski Productions, Inc. ("Plaintiff" or "Peteski") files this Response to Defendant Leah Rothman's ("Rothman") Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense (the "Motion," Doc. No. 10).

## I.   INTRODUCTION

Fair use is an equitable doctrine designed to excuse conduct that would otherwise constitute copyright infringement. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). It is an affirmative defense. *Id.* A defendant, such as Rothman, at the summary judgment stage, "must establish beyond peradventure *all* of the essential elements of ... the defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original), and must demonstrate "the lack of any genuine issue of material fact with regard thereto." *Terrebone Parish Sch. Bd v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

When, as here, the Defendant stole, as she put it, "recorded on my cell phone, a video clip of Dr. McGraw," (Rothman Decl. Doc No. 10-2 at p. 2), the unpublished copyrighted work (the "Work"), her fair use defense is barred. As one court found, fair use is "not a license for corporate theft." *Iowa State Univ. Research Found., Inc. v. Am. Broad Cos. Inc.*, 621 F.2d 57, 61 (2d Cir. 1980). "To invoke the fair use exception, an individual must possess an *authorized copy* of a literary work." *Atari Games Corp v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 562-63 (1985) ("Knowing exploitation of ***purloined*** manuscript not compatible with 'good faith' and 'fair dealings' underpinnings of fair use doctrine.") (emphasis supplied); *see also DSC Comms. Corp v. DGI Techs, Inc.*, 898 F. Supp. 1183, 1192-94 (N.D. Tex. 1995), *aff'd* 81 F.3d 597 (5th Cir. 1996) (rejecting the fair use defense because defendants "took something that did not belong to them without the knowledge or permission of the owner").

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                        **PAGE 1**

18751410v.14

This corporate theft is especially egregious because Rothman purloined the Work just days after a March 11, 2015 staff meeting, conducted by Dr. McGraw, where the subject of stolen intellectual property was discussed and the staff was put on notice that such theft would not be tolerated. *See* Declaration of Charles L. Babcock ("Babcock Decl.," attached to this Response as Exhibit "1"), at Ex. B (Rothman's First Amended Complaint in her state court lawsuit, the "State Case"), pp. 3-4.

So, as a threshold matter, fair use is not an available defense because Rothman admits that she stole the Work. *See* Defendant's Undisputed Material Facts and Supporting Evidence No. 3 (Doc. No. 10-3 purported undisputed material fact number 3 at p. 1). Although she argues her theft was for good reason, her motive is irrelevant and, in any event, disputed. In addition to using the Work to extort a settlement in the State Case, Defendant and/or her agents have offered or intend to sell her story to the tabloids, such as the National Enquirer, which have an insatiable appetite for videos of celebrities. Declaration of Lisa LeMaster ("LeMaster Decl.," attached to this Response as Exhibit "2") ¶¶ 12-13; Declaration of L. Lin Wood ("Wood Decl.," attached to this Response as Exhibit "3") ¶ 2. Rothman purloined an ***unauthorized copy*** of the unpublished work (Declaration of Rich De Michele ("De Michele Decl.," attached to this Response as Exhibit "4") ¶ 16) and, for this reason alone, summary judgment should be denied.

Even if, however, the Court reaches the merits of the fair use defense, there are, at the very least, disputed issues of material fact regarding the four factors used to analyze fair use. As the Supreme Court observed long ago in an opinion liberally cited by Defendant (Motion at 5-7, 13-14), the affirmative defense of fair use is a mixed question of law and fact that requires factual findings, or reliance on undisputed or admitted material facts, for analysis. *See Acuff-Rose Music*, 510 U.S. at 577. Not surprisingly, many courts have held that the "four factors raise

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                 **PAGE 2**

18751410v.14

essentially factual issues [and] are normally questions for the jury." *DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 28 (2d Cir. 1982); *see also Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 294 (S.D.N.Y. 1991) ("Fair use is a mixed question of law and fact…which requires a fact-intensive inquiry ill-suited for summary judgment") (citations omitted).

This case is no exception. Each of the four fair use factors are either disputed or indisputably favor Plaintiff. Factor one (purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit/educational purposes) is disputed. The National Enquirer has been in contact with Rothman and subsequently published a story about the State Case against Peteski and others. *See* Wood Decl. ¶ 2; Exs. I, J, K to the Babcock Decl. Defendant's intended purpose and use of the unpublished Work is to: (i) use it in the State Case to extort a settlement; and/or (ii) profit by selling or licensing it to a third party media company. *Id.*; LeMaster Decl. ¶¶ 13-14.  In either event, the purpose and use is commercial and not for nonprofit educational purposes.

The second factor (the nature of the copyrighted work as creative and expressive and not factual) indisputably weighs in Plaintiff's favor. The Work is expressive and does not merely recite facts like the names and addresses in a phone book. *See, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45 (1991).

The third factor (extent of copying) favors Plaintiff. Rothman copied **the entire work**. *See* De Michele Decl. ¶¶ 12-16. "It may not constitute a fair use if the entire work is reproduced." *Infinity Broad Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998).

The fourth factor (the effect upon the potential market) is mischaracterized by Plaintiff but is, in any event, disputed. As Ms. LeMaster declares, "[e]ven the knowledge that an unauthorized copy of the video, or of videos like it, is in the possession of a third party could

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE** **PAGE 3**

18751410v.14

negatively impact Peteski's willingness and ability to use such video or any portion thereof in a subsequent work." LeMaster Decl., ¶¶ 12-16; *see also* De Michele Decl. ¶ 29.

Each of the factors, properly analyzed, conclusively refutes Rothman's assertions of fair use or, at the very least, raises a disputed issue of material fact precluding summary judgment.

## II.    PROCEDURAL BACKGROUND

In response to Peteski's Complaint (Doc. No. 1), Rothman filed a Motion to Dismiss Action or Alternatively for Summary Judgment based solely on her defense of fair use. The Court converted the motion to dismiss into one for summary judgment and set a briefing schedule. (Doc. No. 26). Rothman also asks that, in the event of a ruling in her favor, "the court retain jurisdiction to decide a motion for attorney's fees …" Motion at 2 n.1.

## III.    RESPONSE TO ROTHMAN'S STATEMENT OF ISSUES

In response to Defendant's single issue, (Motion at 4), Peteski submits that the issues, properly framed, are as follows:

1. Viewing the facts in the light most favorable to Peteski, and drawing all reasonable inferences in favor of Peteski's claims, has Rothman established that she is entitled to rely on the equitable doctrine of fair use, in light of the summary judgment evidence demonstrating that Rothman secretly copied (that is, stole) the Work from the database of her employer after she had been specifically put on notice that theft of property would not be tolerated and did so in direct conflict with the promises and other undertakings she made concerning the DPS?

2. Even if Rothman is entitled to assert the fair use defense here, has Rothman established "beyond peradventure *all* of the essential elements … of [her] defense to warrant judgment in [her] favor"?  *See Fontenot*, 780 F.2d at 1194 (emphasis in original).

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                                                 PAGE 4

18751410v.14

## IV.   SUMMARY JUDGMENT STANDARD

The summary judgment standard is, of course, well known to the Court.  *See, e.g., Smith v. Michels Corp.*, No. 2:13-CV-00185-JRG, 2014 U.S. Dist. LEXIS, at *4 (E.D. Tex. Feb. 24, 2014). Summary judgment is proper if the pleadings, discovery, filed disclosure materials and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding such motions, courts must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194 (emphasis original); *Terrebonne Parish Sch. Bd.*, 310 F.3d at 877 ("evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto.").

Fair use is an affirmative defense for activity that would otherwise be deemed infringement. *Acuff-Rose Music*, 510 U.S. at 577. The defense of fair use is a mixed question of law and fact.  *Harper & Row,* 471 U.S. at 560.  Fair use "'may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion' – but not otherwise." *Ty, Inc. v. Publ'ns Int'l*, 292 F.3d 512, 516 (7th Cir. 2002).  "Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright."  *Id*. at 578.

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense**                                                          **Page 5**

18751410v.14

## V.   PLAINTIFF'S RESPONSE TO ROTHMAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.)  Plaintiff does not dispute that Rothman worked as a Segment Director for the DPS off and on between 2003 and April 2015. (Def. UMF 1) (*See* De Michele Decl. ¶ 8). Whether she worked there for "most of the time" is vague and, depending on Defendant's definition of "most of the time" is disputed although not relevant to the Motion. Rothman was working at the DPS when she stole the Work.

2.) Plaintiff does not dispute that "in April 2015 Rothman retained Matern Law Group PC to represent her" relating to the DPS. (Def. UMF 2).

3.) Plaintiff does not dispute that "after retaining Matern Law Group, PC and while she was still working on the Dr. Phil Show, Rothman recorded, on her cell phone a video clip of Dr. Phil McGraw." (Def. UMF 3). It is disputed as to exactly how Rothman obtained the "video clip" as she has told different stories under oath, first testifying that she recorded it on her iPhone from her desktop computer on the main floor of the CBS building but then changing that to an edit bay in the basement of the building. *See* Exs. C, D & E to the Babcock Decl., excerpts of Rothman's deposition testimony in the state case, her errata to that testimony, and her discovery responses.

4.) Plaintiff does not dispute that the stolen video clip "is nine (9) seconds long" (Def. UMF 4) but it disputes that the Work is longer. The Work is nine (9) seconds long.  *See* De Michele Decl. ¶ 13.

5.) Plaintiff disputes how Rothman obtained the Work. (Def UMF 5). *See* Babcock Decl. above.

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                      **PAGE 6**

18751410v.14

6.) Plaintiff disputes that "at the time Rothman recorded the video clip she did not realize that it may be or was copyrighted" although whether she knew or not is immaterial to infringement. (Def. UMF 6). In the State Case lawsuit against Peteski and others, Rothman alleges that "[a]t all relevant times herein, Peteski has been the copyright owner of the Dr. Phil Show." (Ex. B to the Babcock Decl., at p. 2), and she thus judicially admits the fact and, obviously, that she knew about it. *Id.* In addition, every episode of the DPS since, at least, 2005 identified Peteski as the copyright owner. *See* De Michele Decl. ¶¶ 18-22 and 10 ("Rothman was made aware of Peteski's ownership in the intangible rights, including copyrights, of the DPS.").

7.) Plaintiff disputes that Rothman "recorded the video clip solely because she thought she might need a bona fide example of Dr. McGraw's conduct for her lawsuit." (Def. UMF 7). *See* Wood Decl. ¶ 2, and *supra*, at pp. 13-14 of the Response.

8.) Plaintiff disputes that Rothman "did not send, give, reproduce, transmit, e-mail or otherwise disseminate the video clip to any other person except [her] lawyers" and in response to discovery in the State Case.  The Defendant's Summary Judgment evidence is only that Rothman personally did not provide the video clip to third parties. Her lawyer (Ms. Kalili) executed a declaration but does not swear that she or her firm did not disseminate it. (Motion at 2-4). Neither Rothman nor her lawyers deny that they discussed the video clip with third parties nor do they deny that it was offered for sale by itself or as part of a larger "story" about the celebrity, Dr. Phil.  Even if they had made these declarations, Plaintiff has brought forth evidence that at least one of Rothman's motives in recording the infringing copy of the Work may have been to sell the video to the National Enquirer.  Wood Decl. ¶¶ 2, 4; the National Enquirer article (Ex. I to the Babcock Decl.) and two recorded telephone messages from the National Enquirer to Rothman  (Exs. J & K to the Babcock Decl.).

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                    **PAGE 7**

18751410v.14

9.) Plaintiff disputes that Rothman "never intended to send, give, copy, reproduce, transmit, e-mail or otherwise disseminate the video clip to any person for any purpose other than for use" in the State Case. (Def. UMF 9). There is evidence that she or her agents did in fact discuss the State Case with the National Enquirer. *See* ¶ 8, *supra*. There is also evidence that Rothman and her associates, who left the Dr. Phil Show, were discussing ways to monetize video and audio tapes they took from DPS . Exhibit F to the Babcock Decl. (Ford Dep.), pp. 47-59 & Ford Exs. 5-7.

## VI.   ADDITIONAL EVIDENCE REFUTING DEFENDANT'S SUMMARY JUDGMENT MOTION

Peteski is a Texas corporation, formed in 2001, whose principal office and business address was in Texarkana at the time suit was filed, and is located at 3001 Richmond Rd., Suite B, Texarkana, Texas 75503.  Declaration of William Scott Madsen ("Madsen Decl.") ¶¶ 3-4. Peteski is the owner of the copyrights in the Dr. Phil Show (the "DPS), which is hosted by Dr. Phil McGraw ("McGraw") and produced by CBS Studios Inc. ("CBS").  De Michele Decl. ¶ 3. The DPS is the No. 1 rated daytime talk television broadcast.  *Id.*

There are 1000s of hours of Peteski's copyrighted DPS video footage, and they are stored in a database (the "DPS Video Vault") maintained by CBS which produces the DPS for Peteski. *Id.* at ¶ 4. The video footage in the DPS Video Vault is restricted and confidential.  *Id.* at ¶ 5. Access to the DPS Video Vault is, likewise, restricted and confidential. *Id.* at ¶ 6. Only personnel who have undertaken a pledge of confidentiality concerning the video footage may gain access to the DPS Video Vault.  *Id.* at ¶ 7.

In 2014, a video clip of McGraw was filmed (the "Work") and it was taken onboard a private plane. Madsen Decl. ¶ 5. In the Work, McGraw is speaking with a DPS production team.

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                    PAGE 8

18751410v.14

*Id.* at ¶ 6. McGraw is the only person visible on the video. *Id.* The Work is a candid recording of personal expression and does not contain informational or factual material.  *Id.* The Work has been in the DPS Video Vault since at least February 2015. De Michele Decl. ¶ 14.

Peteski is the registered owner of United States Copyright Reg. No. Pau003829623 at the U.S. Copyright Office for the Work. Madsen Decl. ¶ 7. Exhibit "A" to the Madsen Decl. is a true and correct copy of the copyright registration certificate. Peteski is the author and creator of the Work.  The Work is a work made for hire authored by Peteski; has never been published; and is a work containing material wholly original with Peteski. *Id.* at ¶ 8; De Michele Decl. ¶ 13.  The Work has never been broadcast. De Michele Decl. ¶ 13.

Rothman worked on the DPS, off and on, from approximately December 2003 until April 2015.  De Michele Decl. ¶ 8.  During the more-than-a-decade of time she did so, Rothman was involved in over one hundred DPS episodes. De Michele Decl. ¶ 9. As a result, Rothman was made aware of Peteski's ownership in the intangible rights, including copyrights, of the DPS. De Michele Decl. ¶ 10. Among other things, the prominently displayed copyright ownership information for every DPS episode – dating back to 2005 – identified Peteski as the copyright owner. De Michele Decl. ¶¶ 18-22.

Rothman knew exactly how the DPS was created, how the shows are filmed, and the creative forces that are brought to bear in shooting scenes and other video events. *Id.* at ¶ 11. And because of Rothman's tenure and work with the DPS, CBS – Rothman's employer – placed its trust in Rothman by providing her limited and confidential access to the vast collection of DPS-related videos (including the Work) in the DPS Video Vault – the intangible rights in which are  owned by Texas' Peteski. *Id.* at ¶ 17. Even so, access to the vault for someone in Rothman's

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                      **PAGE 9**

18751410v.14

position would have required the assistance of another CBS employee likely Jane or John Doe, Defendants herein.

Indeed, Rothman's access to the 1000s of hours of tape in the DPS Video Vault was so restricted and confidential that Rothman agreed to (and did) execute several agreements which governed the very specific terms by which she was granted such access. *Id.* at ¶¶ 4-7, 23.  On September 9, 2014, Rothman signed a "Confidentiality Policy" agreement (Ex. D to the De Michele Decl.) in which she pledged herself to the following:

**<u>Confidentiality Assurances</u>**

1. During your employment or business relationship with [CBS], and thereafter, to the fullest extent permitted by law, you are obligated to keep confidential and never disclose, use, misappropriate, or confirm or deny the veracity of, any statements or comment concerning Dr. Phil McGraw, the Dr. Phil show, or any of his/its Confidential Information. The phrase "Confidential Information," as used in this policy, includes but is not limited to, any and all information which is not generally known to the public, related to or concerning: … (b) the business activities, dealings or interests of the Dr. Phil show and/or its officers, directors affiliates, employees or contracts…

2. During your employment or business relationship with, and thereafter, you are obligated to refrain from giving or participating in any interview(s) regarding or related to … the Dr. Phil show, … and/or any matter which concerns, relates to or involves any Confidential Information.

 3. During your employment or business relationship with, and thereafter, if you are contacted by a person, media representative or journalist who requests an interview statement from you, you are obligated to refrain from disclosing or confirming or denying the veracity of, any information or question presented to you by said person, media representative or journalist. Further, in response to all such requests, you should immediately reject the request, issue a "no comment" statement and immediately advise the [CBS] Programming executive assigned to the series of the request and the details and circumstances surrounding the request.

4. Upon termination of your employment or business relationship with [CBS], you are obligated to immediately return all property, photographs, videotapes, and/or other tangible information concerning or related to the Dr. Phil show or Dr. Phil McGraw and/or any tangible document which contains or relates to any Confidential Information…

5. You are expressly prohibited from using or disclosing to any person, or using for your own personal gain, any information which is not generally available to the public, or which, in the case of information gathered for use in a program, has not been broadcast.
…

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                    **PAGE 10**

18751410v.14

By my signature below, I knowledge that I have received a copy of and read [CBS'] policy governing Confidentiality.  I also agree to abide by all of its terms to the fullest extent permitted by Law.

Leah Rothman
Print Name

Again, on January, 2014, Rothman executed another "Confidentiality Policy" agreement (Ex. E to the De Michele Decl.) in which she bound herself to the very same **Confidentiality Assurances**.  And, again, Rothman's pledge of confidentiality was capped off by her clear acknowledgment and signature:

ACKNOWLEDGEMENT OF RECEIPT

By my signature below, I acknowledge that I have received a copy of and read CBSTD's policy governing Confidentiality. I also agree to abide by all of its terms to the fullest extent permitted by Law.

Signature                                              1.19.15
                                                         Date

Leah Rothman
Print Name

Also on September 9, 2014, Rothman certified that she had received, read, and carefully understood the CBS Business Conduct Statement (the "Business Conduct Statement," (Ex. F to the De Michele Decl.)), and that she agreed to "follow each of the policies in the Statement." Ex. G to the De Michele Decl.  In that certification, Rothman was reminded of the reason for the certification: "[i]n order to promote an ethical and law-abiding environment…"  The Business Conduct Statement provides, among other things: "As a company with very significant intellectual property assets, CBS is particularly aware of its obligations to respect the intellectual property rights of others even as it vigorously defends its own rights. In particular, we expect you to respect copyright laws, and we will take a very serious view of any use of CBS assets to infringe copyrights." Ex. F to the De Michele Decl., at p. 18.  That document also warns:

In carrying out CBS's business, you often learn confidential or proprietary information about CBS, its customers, prospective customers, or other third parties.  Employees, officers, and directors must maintain the confidentiality of all information entrusted to them, except when

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                              **PAGE 11**

18751410v.14

disclosure is authorized or legally required. Confidential or proprietary information includes, among other things, any nonpublic information concerning CBS, including its businesses, financial performance, results, or prospects, and any nonpublic information provided by a third party with the expectation that the information will be kept confidential and used solely for the business purpose for which it was conveyed. You must preserve confidential information even after your employment (or service as a director or officer) ends.

Additionally, you are prohibited from recording the conduct of any CBS business via tape recorder, electronic recording device, or any other nonmanual or nonwritten means.

*Id.* at p. 8.

Between April 9, 2015 and April 24, 2015, *after* pledging to abide by the Confidentiality Assurances and the Business Conduct Statement and *after* hiring Matern as her counsel, Rothman (with some assistance) raided the DPS Video Vault. Motion at 2; Ex. D to the Babcock Decl., at pp. 235-36. Without authorization and in conscious disregard of her written Confidentiality Assurances, she made illicit copies of the Work.  First, she made a direct copy of the Work using her iPhone; and then saved another copy of her infringing iPhone recording to her personal computer. These are copies of the entirety of the Work. De Michele Decl. ¶ 15.

While it is clear that she used her iPhone and her personal computer for this unauthorized conduct, Rothman's own testimony about *where* the copying took place is directly conflicting. Specifically, when Rothman was questioned in the State Case about where she had made the copy of the Work, Rothman testified:

> A. … I played it at my desk and recorded it.
> Q. You played it -- you pulled it up at your desk at the "Dr. Phil Show."
> A. Yes.
> Q. And you recorded it -- I'm sorry – with your phone?
> A. Yes.

Ex. D to the Babcock Decl. (Rothman Dep.), at p. 219, ll. 2-9.  A few minutes later, Rothman *again* swore she took the recoding by playing it from her desktop:

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense**                                   **Page 12**

18751410v.14

Q. Back to the video of Dr. Phil on the -- Dr. Phil McGraw on the airplane. I believe you said you took it at some point before you left the "Dr. Phil Show" on April 24 of 2015; right?

A. Yes.

Q. And did you say you took it from your desktop?

A. Yeah.

Q. So you were at your desktop that you showed in the diagram that we talked about earlier today, and you pulled up that video. And then you took that – it's not really a screenshot but screen video?

A. Yes.

Q. From your desktop.

A. Yes.

Q. On the main floor at the Mae West Building.

A. Yes.

Q. You're sure you didn't take it down at the edit bay?

A. No.

*Id.* at p. 234, ll. 4-25.  Weeks after that deposition, Rothman changed her testimony about where she made the illicit recording of the Work.  In the Errata Sheet to her deposition transcript, Rothman stated that she hadn't made the recording on the main floor of the Mae West Building after all, but that she'd done so "in the edit bay," in "the basement" of the Mae West Building. Exhibit E to the Babcock Decl.  Most recently, in her Declaration in this case – and *despite having twice denied it under oath* in the State Case – Rothman contends she "recorded the video clip from a monitor in an editor's bay at the Dr. Phil Show's production office at Paramount Studios in Los Angeles, California."  Doc. No. 10-2, p. 2, ¶ 8.

On January 20, 2016, Rothman filed the State Case in Los Angeles County superior court, *Rothman v. Peteski Productions, Inc. et al.*, Los Angeles County Superior Court Case No. BC607535. Exhibit A to the Babcock Decl. (Complaint).  Her complaint stems from a March 11, 2015 meeting of the DPS staff in the Mae West Building where she worked. Ex. B to the Babcock Decl. (First Amended Complaint), at pp. 3-4.  Rothman claims that she was "falsely imprisoned" during this staff meeting which lasted between 5 and 20 minutes. Exs. G & H to the Babcock Decl. (De Michele Dep. at p. 50, ll. 2-3; Phillips Dep. at p. 50, ll. 11-14).  She also

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                                    PAGE 13

18751410v.14

claims intentional infliction of emotional distress because, she says, at the meeting Dr. McGraw used profanity in warning that theft of the show's intellectual property would not be tolerated. Ex. B to the Babcock Decl. (First Amended Complaint), at pp. 3-4.  A few days later she stole the show's intellectual property which theft is the subject of this case. Ex. D to the Babcock Decl. (Rothman Dep.), at pp. 235-36.

In March 2016, Lin Wood, an Atlanta based attorney who represents Dr. McGraw, became aware that American Media, Inc. ("AMI") which owns and publishes the National Enquirer, had run a false and defamatory article about Dr. McGraw based on information provided in part by Leah Rothman. Wood Decl. ¶ 2. On Dr. McGraw's behalf, Mr. Wood demanded a retraction of the article and, when none was forthcoming, filed a lawsuit against AMI.  *Id.* During the course of his review and investigation regarding Dr. McGraw's claims, Mr. Wood concluded that Ms. Rothman or her agents were sources for AMI and had likely been paid a substantial sum of money to provide false information detrimental to Dr. McGraw to the National Enquirer which resulted in the article sued upon.  *Id.*

All of the video footage in the DPS Video Vault (the "Vault Videos"), including candid videos and outtakes such as the Work, have value and potential value to Peteski. De Michele Decl. ¶ 27. In fact, any unauthorized copies of any of the contents of the Vault Videos have value and potential value to Peteski. *Id.* at ¶ 28; LeMaster Decl. ¶ 14. The potential value of those videos includes their potential use on episodes of the DPS as well as their use in other conceivable fashions, such as in documentaries or special broadcasts or features. Any unauthorized copying of any Vault Videos has a meaningful impact on the potential market for such video. LeMaster Decl. ¶ 14. Even the *knowledge* that an unauthorized copy is in the possession of a third party could negatively impact Plaintiff's willingness and ability to use such

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                    PAGE 14

18751410v.14

video or any portion thereof in a subsequent work.  De Michele Decl. ¶ 29; LeMaster Decl. ¶ 15.

This would mean a direct negative impact on the potential market for such video. *Id.*

## VII.   ARGUMENT AND AUTHORITY

The Motion should be denied because the undisputed summary judgment evidence (a) fails to demonstrate that Rothman, who copied the Work in direct breach of confidence, is even entitled to rely on the equitable defense of fair use to copyright infringement, and (b) demonstrates the *sheer absence* of any "facts" that support her affirmative defense, which numerous courts have held is fact intensive.

### A.   Rothman's claim of innocence is irrelevant, and inaccurate.

"To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable." *Eng'g Dynamics, Inc. v Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999)). As an initial matter, Rothman does not dispute either Plaintiff's ownership of a valid copyright in the Work, or her copying of copyrightable elements of the Work.   Rather, Rothman defends her copying by asserting the affirmative defense of fair use.  Motion at 1.

In so doing, Rothman contends that she was unaware the Work was copyrighted.  Motion at 2.   This assertion, however, is irrelevant, as knowledge is not an element of copyright infringement under 17 U.S.C. §501(a).  *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986) (innocent infringers are liable for infringement). Moreover, Rothman's protestations of innocence are *flatly inaccurate*. Rothman admitted she knew of Peteski's copyrights because *she alleged it* in her January 2016 State Case Complaint (Ex. A to Babcock Decl. at p. 2, ¶ 5) ("[a]t all relevant times herein, Peteski has been the copyright owner

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                                        PAGE 15

18751410v.14

of the Dr. Phil show"); and since at least 2005, every DPS episode has prominently displayed a copyright notice identifying Peteski as the copyright owner.  De Michele Decl. ¶¶ 18-22.

Assertions that Rothman was wholly unaware of Peteski's ownership of copyright in the Work are as contradicted as they are irrelevant.

### B.     Rothman is not entitled to rely on the equitable doctrine of fair use as a defense to her admitted copyright infringement.

Rothman is precluded from relying on the equitable defense of fair use.  As it is an "equitable rule of reason," fair use presupposes "good faith" and "fair dealing."  *Harper & Row*, 471 U.S. at 560, 562; *see also MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981) (noting that in analyzing entitlement to fair use, the court may consider whether the "copying was done in good faith or with evasive motive").   The doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance."  *Iowa State*, 621 F.2d at 61.

In *Harper & Row*, the defendant knowingly obtained an unauthorized copy of a confidential, unpublished manuscript and proceeded to publish portions of it in an effort to "make news" in advance of the scheduled publication.  471 U.S. at 543.  Despite the defendant's assertions of fair use due to the "substantial public import of the subject matter," the Supreme Court reversed the Court of Appeals' finding of fair use, emphasizing the unpublished nature of the work and the knowing exploitation of a "purloined manuscript."  *Id.* at 556, 562-64.  The Supreme Court wrote: "[a] use that so clearly infringes the copyright holder's interests in confidentiality and creative control is difficult to characterize as 'fair.'"  *Id.* at 564.

The Supreme Court's reasoning in *Harper & Row* is directly applicable here. The confidential and unpublished nature of the DPS videos is undisputed.  *See* De Michele Decl. ¶¶

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                    **PAGE 16**

18751410v.14

4-7, 13, 17.   Here, Rothman explicitly agreed, in connection with her employment and in exchange for access to a confidential database, not to misappropriate any confidential information relating to the DPS, to return all tangible information including videotapes at the termination of her employment, and not to use or disclose information in her possession which had not been broadcast and was not generally available to the public.   Exs. D-G to the De Michele Decl., and ¶¶ 17, 24-26.   She further acknowledged to her employer that she would comply with copyright laws and not use her employer's assets to violate anyone else's copyrights.   Exs. D-E to the De Michele Decl., and ¶¶ 24-25. Her actions in surreptitiously capturing a recording of the unpublished Work, making a copy of it, retaining it in her possession, and transferring it to her attorneys are all in direct violation of her agreements. Accordingly, her copy of the Work was an unauthorized copy and, as noted by the Federal Circuit, she is not entitled to the defense of fair use.   *See Atari Games*, 975 F.2d at 843 (citing *Harper & Row*, 471 U.S. at 562-63) ("[t]o invoke the fair use exception, an individual must possess an authorized copy of a literary work"); De Michele Decl. ¶ 16.

In *Atari Games*, after obtaining a copy of software code under false pretenses, Atari deciphered the code and developed its own program. *Id*. at 836. In rejecting the defense of fair use, the Federal Circuit noted that Atari obtained the copyrighted software through a violation of Copyright Office rules and thus its possession and reproduction of the software program were not authorized.   *Id*. at 841-43.   Atari's activity did not qualify as fair use.   *Id*. at 843.

The facts of *DSC Comms. Corp.*, cited in Rothman's Motion, in which the defendant accessed and copied software in direct violation of a license agreement, are also squarely adverse to Rothman's arguments. 898 F.Supp. at 1192-93. In *DSC*, the software was not publicly available and was provided to the defendant through a contractual relationship.   *Id.*   In

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                             **PAGE 17**

18751410v.14

considering whether the defendant was entitled to a fair use defense, the court noted that "the manner in which [defendant] obtained the operating system software is relevant" and found that the defendant "took something that did not belong to them without the knowledge or permission of the owner." *Id.* at 1193-94. Citing *Atari*, because the software was obtained through the knowing exploitation of access to the software and in violation of the defendant's relationship with the plaintiff, the court denied the defense of fair use because the defendant was not authorized to possess the downloaded copies. *Id.* at 1194, 1196-97 (granting preliminary injunction as to software).

Importantly, the *Winstead PC* opinion, on which Rothman heavily relies, specifically distinguished the facts of *Harper & Row*, *Atari*, and *DSC* in reaching a finding of fair use and noted that in those cases, "the original copies were obtained in improper ways for known impermissible purposes." *Am. Inst. of Physics v. Winstead PC*, No. 3:12-cv-1230-M, 2013 WL 6242843, at *12 (N.D. Tex. Dec. 3, 2013).   The district court observed that "the courts [in *Harper & Row*, *Atari*, and *DSC*] weighed the equities in each case, and when a party obtained the relevant material through a breach of confidence or deception, the balance of equities changed." *Id.* The court in *Winstead PC* instead emphasized that the infringed work at issue in that case was "neither confidential nor unpublished." *Id.*

The present facts are in line with *Harper & Row*, *Atari*, and *DSC*, demonstrating Rothman's inability to rely on a defense of fair use, and are directly distinguishable from *Winstead*. The copy of the Work stolen by Rothman was unpublished and obtained in an improper way for an impermissible purpose. Her agreements directly prohibited her from doing what she did. *See* Exs. D-G to De Michele Decl. Without permission, Rothman took deceitful advantage of her status with the DPS to surreptitiously copy Peteski's Work (De Michele Decl.

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                    PAGE 18

18751410v.14

¶¶ 4-7, 16) – with the full knowledge of her counsel in this case – and then took it with her after she departed her employment. (Exhibit D to the Babcock Decl., pp. 235-36).  Because Rothman was not authorized to record, possess, or disclose a copy of the unpublished Work, her admitted infringing copying of the Work does not qualify as fair use, and her Motion should be denied. *See DSC*, 898 F.Supp. at 1194*; see also Atari*, 975 F.2d at 843 ("Because [defendant] was not in authorized possession of the [software], any copying or derivative copying of [software] source code …does not qualify as a fair use").

### C.     Each factor of the fact-intensive fair use analysis weighs sufficiently in Plaintiff's favor to warrant denial of the Motion.

Even if Rothman were entitled to assert fair use, and she is plainly not, her Motion must still be denied.  Drawing all reasonable inferences in Peteski's favor, the fact-intensive defense of fair use simply cannot be established at this stage. Analysis of fair use requires consideration of multiple factors with the results "weighed together, in light of the purposes of copyright." *Acuff-Rose Music*, 510 U.S. at 578.

The fair use factors include: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107. Moreover, "[t]hese statutory factors are not exclusive." *DSC*, 898 F.Supp. at 1188.  On the whole, considering each factor addressed by Rothman separately, there is considerable reason to find that the doctrine of fair use is inapplicable and the Motion should be denied.  It follows, then, that Rothman cannot establish *all* of the essential elements of the claim or defense to warrant judgment in her favor.

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                    **PAGE 19**

18751410v.14

### 1.    The character and purpose of Rothman's use of the Work do not support the defense of fair use under the present facts.

The first factor of the fair use analysis, the purpose and character of the use, weighs in favor of Plaintiff under the present facts, which are to be construed in Plaintiff's favor.   In addressing this first factor, many courts consider the conduct of the defendant.  *See Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 627 F. Supp. 2d 123, 131 (S.D.N.Y. 2007) ("whether defendant acted in bad faith presents issues of fact for resolution at trial."); *see also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1173 n.6 (9th Cir. 2012) (emphasizing the general rule that a party claiming fair use must act in a manner generally compatible with principles of good faith and fair dealing); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478-79 (2d Cir. 2004) (discussing the importance of explicitly considering the "propriety of [a] defendant's conduct" within the analysis of the first factor; and that the defendants' knowledge of their unauthorized access to the work derived from a violation of law or breach of duty, thus weighing in favor of the plaintiffs); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) ("[a]n unlawful acquisition of the copyrighted work generally weighs against a finding of fair use"). Here, as shown *infra* at pp. 16-19 of this Response, Rothman's inequitable conduct and bad faith behavior significantly detract from her ability to claim any fairness in the character and purpose of her use.

Further, Rothman's (hollow) claim that she intended to use the Work for non-commercial purposes does not entitle her to a presumption of fair use.  "[T]he mere fact that a use is educational and not for profit does not insulate it from a finding of infringement, any more than the commercial character of a use bars a finding of fairness." *Acuff-Rose Music*, 510 U.S. at 584. And determining whether or not a use is a "commercial use" is not straightforward because that term can include a variety of activities that might not ordinarily be considered "commercial" or

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                   **PAGE 20**

18751410v.14

as having the primary intent of making a profit. *See, e.g.*, *Lish v. Harper's Magazine Foundation*, 807 F.Supp. 1090, 1101 (S.D.N.Y. 1992) (finding use of a copyrighted letter in a magazine published by a non-profit organization to be of a "commercial nature"); *see also World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 531 (S.D.N.Y. 2001) (finding that use of copyrighted works in fundraising video for non-profit media watchdog engaged in criticism of copyright owner was commercial use); *Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*, 503 F. Supp. 1137 (S.D.N.Y. 1980) (finding an unsponsored television broadcast as a "commercial use," given that a television station may gain at least indirect commercial benefit from the ratings boost occasioned by an unsponsored program). As noted in *Acuff-Rose Music*, even non-profit, educational activities can be infringing.  510 U.S. at 584.

Moreover, direct economic benefit is not required to demonstrate a commercial use. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001).  As the Supreme Court has stated, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562; *see Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989) (holding that a professor's verbatim copying of an academic work was not fair use, in part because "the profit/nonprofit distinction is context specific, not dollar dominated" and a professor can "profit" by gaining recognition among his peers and authorship credit).

In any event, Rothman's claim, that she had no commercial purpose in making a copy of the Work, is both flatly disputed by Peteski and belied by the summary judgment evidence. Peteski has introduced evidence that at least one of Rothman's motives in recording the infringing copy of the Work may have been to sell the video to the National Enquirer.  Wood

**PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE**                                                                 **PAGE 21**

18751410v.14

Decl. ¶¶ 2, 4.  At a minimum, Rothman's true intent and motive in obtaining a copy of the Work is hotly contested, and the extent to which her intended use of the video is non-commercial is disputed by Plaintiff's evidence.  This weighs strongly against granting the Motion.

Further, the facts show that Rothman has made no transformative use of the Work that might permit her to claim some cognizable contribution to the creative arts, which the fair use defense is intended to protect.  *Harper & Row*, 471 U.S. at 579 (noting that the central purpose of the first factor of the analysis is to determine whether the new work supercedes the original or "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message").  That she has a copy, and she has transmitted it to her attorneys, is all she alleges. Motion at 2-3. Accordingly, the entirety of the Work remains in Rothman's possession, unadapted and untransformed, essentially as collateral in the event Rothman ***might*** need it for her lawsuit or for some other purpose.  *Id*.  While she may contend that such use is non-commercial, at present, she has certainly failed to show that she has made use of the Work in a creative, transformative manner in accordance with the purpose and intention of the fair use doctrine.  *See Harper & Row*, 471 U.S. at 579 (noting that "transformative works…lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright").

Among other things, Rothman also claims she is entitled to use the Work, as a fair use, in a judicial proceeding.  Although some uses of copyrighted works as evidence in a judicial proceeding might be considered fair use, neither the present facts nor the cases cited in the Motion compel the conclusion that Rothman has established fair use.  *See Shell v. Devries*, No. Civ. 06-CV-00318-REB, 2007 WL 324592, at *3 (D. Colo. Jan. 31, 2007) (the use of copyrighted material in judicial proceedings is not inherently fair use).  Notably, it is not alleged

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                              PAGE 22

18751410v.14

that the copy of the Work has been admitted as evidence in State Case, nor that she considers it to be central to her claims.  In fact, the summary judgment evidence shows that they are *not* central to Rothman's claims in the State Case. Rather, Rothman has stated that she copied the Work because she thought she **might** need it for her lawsuit.  Motion at 2 (emphasis added). Indeed, her unauthorized access of the database of confidential video files and impermissible copying of the Work, in breach of her confidential undertakings and *after* she hired Matern, forecloses her ability to use the Work for any permissible purpose.

None of the cases Rothman relies upon involve use of a wholly unpublished, confidential work that was obtained improperly, without authorization, and in violation of a contractual obligation. For example, in *Jartech, Inc. v. Clancy*, the infringing material was obtained when an individual simply entered a public theater and recorded portions of the work that was being displayed to the public. 666 F.2d 403, 405 (9th Cir. 1982).  In *Shell*, the defendant accessed a publicly available website and obtained copies of infringing material. 2007 WL 324592, at *2. In *Monroe v. James*, the Court specifically noted that the plaintiff, a prison inmate, had no legitimate expectation of privacy in the papers seized from his cell which were allegedly copied and infringed. *Monroe v. James*, No. 9:06-CV-0859 (FJS/DEP), 2008 WL 508905, at *11 (N.D.N.Y February 21, 2008).  In all of these cases, the copies were obtained in an authorized manner.  And in *Berry v. Dillon*, also cited by Rothman, the record supported the district court's conclusion that the underlying work was copied by individuals who reasonably believed they were not violating any agreements.  *Berry v. Dillon*, 291 F. Appx. 792, 794 (9th Cir. 2008).  By contrast, the evidence demonstrates Rothman was in *knowing violation* of confidentiality agreements and other obligations when she copied the Work.  Exs. D-G of the De Michele Decl.

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                      PAGE 23

18751410v.14

An additional case cited by Rothman in her Motion makes it clear that the importance of the content of the copyrighted work to the judicial proceeding is a factor to consider.   In *Levingston v. Earle*, the defendant attached copies of a published, publicly available book to pleadings in a court proceeding against the plaintiff for alleged harassment based on statements made in the book itself.  *Levingston v. Earle*, No. CV-12-08165-PCT-JAT, 2014 WL 1246369, at *1 (D. Ariz. March 26, 2014).  Not only was the book obtained in a proper manner, but the Court also specifically pointed out that reproducing the book was ***necessary*** to provide evidentiary support for the defendants' claims.  *Id*. at *2 ("Defendants could not attempt to prove Plaintiff's written harassment without providing the court with the allegedly harassing material").  Here, Rothman has made no allegation that the Work was necessary to her lawsuit.  She only claims that she might need it.  Motion at 2.  It is hard to comprehend how the Work might be necessary to Rothman's allegations of intentional infliction of emotional distress or wrongful constructive termination when she is not depicted in Peteski's Work, and was not present at the time this Work was created. Ex. D to the Babcock Decl., at p. 218, ll. 17-18.

The *Wollersheim* case cited by Rothman also fails to support her entitlement to a fair use defense under the present facts.  In that case, the defendant was alleged to have obtained stolen religious scriptures from former scientologists, the content of which was kept confidential by the church, and such scriptures were used by defendant in a court proceeding.  *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 365 (9th Cir. 1992).  In a "detailed statement of the facts" that was considered by a Special Master, the plaintiff did not contend that the defendants used the documents for any other purpose than for preparing expert witnesses, nor did the plaintiff dispute that the documents were marked "Confidential" and never offered into evidence.  *Id*. at 365, 367.  Here, Plaintiff's evidence raises considerable dispute as to Rothman's motivation and

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                    PAGE 24

18751410v.14

intended purpose for obtaining the Work. Wood Decl. ¶¶ 2, 4.  In addition, in *Wollersheim*, unlike the present case, the plaintiff did not contend that the defendant himself obtained the copyrighted works in an improper manner.  971 F.2d at 365.

Accordingly, in view of Rothman's bad faith conduct in obtaining a copy of the Work, the dispute over the commercial nature of her use, and the lack of any evidence of a notable transformative use, and drawing all reasonable inferences in Plaintiff's favor, the first factor of the fair use analysis weighs in favor of an absence of fair use and a denial of the Motion.

### 2. The nature of the copyrighted Work is creative and expressive, not factual, and its unpublished nature weighs strongly against fair use.

Rothman's Motion mischaracterizes the second factor of the fair use analysis, "the nature of the copyrighted work."  17 U.S.C. § 107.  It is not a question of whether the Work was "real, not fake."  Motion at 15.  It is, rather, a question of whether the copyrighted work is factual in nature or creative, expressive, or fictional in nature.  Rothman plainly does not allege that the content of the Work simply depicts the subject reciting facts or functional information.  Motion at 15.  The Work footage was taken onboard a private plane, as McGraw, the only person visible on the Work, is speaking with a DPS production team.  Madsen Decl. ¶ 6.  And the fact that the Work itself documents an event does not turn it into a factual work.  *See Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1106 (C.D. Cal. 2015) (finding "point-and-shoot" videos uploaded to YouTube channel to be creative works) (citing *Monge*, 688 F.3d at 1177). Works of creative expression, as opposed to information works, are precisely the sort of expression that the copyright laws aim to protect.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2007).

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense**                                                    **Page 25**

18751410v.14

The Work also is both unpublished and confidential. De Michele Decl. ¶¶ 4-7, 13. This weighs strongly against a defense of fair use. *See Harper & Row*, 471 U.S. at 564 ("the scope of fair use is narrower with respect to unpublished works"). As emphasized in *Harper & Row*, "[t]he right of first publication encompasses not only the choice whether to publish at all, but also the choices of when, where, and in what form first to publish a work." *Id*. Here, considerable effort has been made to protect the confidentiality of the video footage and other sensitive information, including requiring individuals to execute non-disclosure and business conduct agreements. Exs. D-G to De Michele Decl., and ¶¶ 4-7, 17, 23-26. The steps taken by Plaintiff to ensure confidentiality of its video database, including the Work, support precluding Rothman from using the defense of fair use. *See Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1245-46 (N.D. Cal. 1995) (noting plaintiffs adequately demonstrated that the works were "kept confidential using tight security measures" and finding the second factor of the fair use analysis to weigh strongly in plaintiffs' favor) and *compare Psihoyos v. Nat'l Exam'r*, No. 97 Civ. 7624, 1998 U.S. Dist. LEXIS 9192, at *10 (S.D.N.Y. June 22, 1998) ("if the author does not seek confidentiality, fair use is not necessarily precluded as to an unpublished work").

Any lack of intent by Plaintiff to ever publish the Work is irrelevant to the analysis and does not support the defense of fair use. Federal copyright law specifically protects "unpublished works that the author intends never to see the light of day." *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 627 (7th Cir. 2003) (citing *Salinger v. Random House, Inc.*, 811 F.2d 90, 94-97 (2d Cir. 1987) and 17 U.S.C. §§ 104(a) and 301(a)). In *Chicago Bd. of Educ.*, the Court dispensed with defendant's fair use argument that plaintiff did not intend to sell the confidential standardized tests at issue, noting that "the fact that it's not a market value has no significance once the right to copyright unpublished works is conceded, as it must be." 354 F.3d at 630.

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense**                                                        **Page 26**

18751410v.14

Because the Work is a strictly confidential, unpublished work of Plaintiff's that contains expressive, non-factual content, the second factor of the analysis also weighs against Rothman's asserted defense of fair use and in favor of denying the Motion.

### 3.     Rothman unfairly copied the entirety of the Work.

Though not an absolute rule, "generally, it may not constitute a fair use if the entire work is reproduced." *Infinity Broad.*, 150 F.3d at 109; *see also Am. Geophysical Union v. Texaco, Inc.*, 802 F. Supp. 1, 17 (S.D.N.Y. 1992).  The third factor of the fair use analysis, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" (17 U.S.C. § 107) wholly favors Plaintiff because Rothman made an infringing copy of the entire, registered the Work.  Ex. D to the Babcock Decl. (Rothman Dep.), at pp. 235-36; De Michele Decl. ¶ 15.

The *Monge v. Maya Magazines* case in particular is instructive for its analysis of this factor.  In *Monge*, a memory chip containing unpublished photographs of a pop singer's secret wedding was obtained without permission from the groom's vehicle.  688 F.3d at 1168-69.  The memory chip contained six photographs depicting the wedding as well as over 400 other photos and videos that did not depict the wedding.  *Id*. at 1169-70.  After obtaining the memory chip, the defendant magazine published a story that used the six photographs.  *Id*.  The defendant argued the use was fair for its newsworthiness and that it used only a very small portion of the 400 photographs included on the memory chip.  *Id*. at 1174-75, 1179.  The Court of Appeals reversed the District Court's grant of summary judgment on the fair use issue and, with regard to the second factor of the analysis, found that the defendant reproduced "100 percent of the copyrighted photos at issue" by reproducing all six photographs that related to the wedding.  *Id*. at 1178-79, 1184.  The "universe of four hundred other unidentified images and videos that

**Plaintiff's Response to Defendant Leah Rothman's Motion for Summary Judgment on Defendant's Fair Use Affirmative Defense**                                                                   **Page 27**

18751410v.14

happened to be located on the storage device" was not properly considered to be the work as a whole. *Id*. at 1179.  Thus, the second factor "weigh[ed] decisively against fair use." *Id*. at 1180.

As was the case in *Monge*, here the Work is the registered work, and Rothman selected and copied the entirety of the Work.  De Michele Decl. ¶¶ 12-15; Madsen Decl. ¶¶ 5-7. That additional images and videos may have been located on the same storage medium is of no moment.  *Monge*, 688 F.3d at 1180.  Plaintiff has shown that the Work is a self-contained unit of authorship, is the subject of the copyright registration, and was improperly selected and obtained by Rothman due to its unique content; and that she copied the entire Work.  Thus the third factor of the fair use analysis also weighs in Plaintiff's favor.

### 4.    Plaintiff's evidence of an effect upon the potential market for the Work precludes granting Rothman's Motion.

Rothman mischaracterizes the fourth fair use factor (*see* Motion at 16), which concerns the effect of the use upon the ***potential*** market for or value of the copyrighted work.  17 U.S.C. § 107 (emphasis added).  Rothman's failure to include the term "potential" in her quote of the statutory language is significant. Proper consideration of a work's ***potential*** market requires favorable evidence about relevant markets from Rothman and thus she cannot prevail at summary judgment.  *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc*., 109 F.3d 1394, 1403 (9th Cir. 1997) (noting burden on proponent of affirmative fair use defense to bring forward favorable evidence about relevant markets). Rothman's allegation that her improper recording of the Work had zero effect on its market and value omits any consideration or analysis of its ***potential*** market.  Indeed, that is *no* evidence from Rothman on relevant markets for the Work and "[s]ince fair use is an affirmative defense, its proponent would have difficulty

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                         PAGE 28

18751410v.14

carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *See Acuff-Rose Music*, 510 U.S. at 590.

Notably, that Plaintiff may have disavowed any intention to ever publish or market the Work does not eliminate the impact of Rothman's infringement on its potential market.  The need to assess the market value for an author's work "is not lessened by the fact that their author has disavowed any intention to publish them during his lifetime…[h]e is entitled to protect his *opportunity* to sell his [work]." *Salinger*, 811 F.3d at 99.

Plaintiff's evidence supports the existence of a notable potential market for the Work. All of Plaintiff's video footage, including outtakes such as the Work, have value or at least potential value to Peteski. De Michele Decl. ¶ 27. Any unauthorized copy of the Work, or of videos like it, has a meaningful impact on the potential market for such videos. Once a video like this is published on the internet, it goes viral in a matter of minutes. LeMaster Decl. ¶ 14. At that point, the work becomes worthless to the owner, except that it will have damaging consequences to Peteski.  *Id.*  Even the *knowledge* that an unauthorized copy is in the possession of a third party, even if that third party professes an intention to use such video solely in litigation and not to disclose it to anyone, could negatively impact Plaintiff's willingness and ability to use such video or any portion thereof in a subsequent work.  De Michele Decl. ¶ 29; LeMaster Decl. ¶ 15. This would mean a direct negative impact on the potential market for such video. *Id.*

Like the other three fair use factors, the fourth – impact on the potential market – also favors Peteski.

## VIII.   CONCLUSION

Rothman's Motion should be denied.   Rothman has failed to establish beyond peradventure that she is entitled to prevail on the fact-intensive affirmative defense of fair use.

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                           PAGE 29

18751410v.14

Furthermore, Plaintiff has significant evidence that Rothman's conduct in obtaining a copy of the Work was unauthorized, malicious, in bad faith, and contrary to the obligations Rothman, an employee, owed to her employer CBS Studios Inc. (Producer of the DPS), which preclude her from reliance on the equitable defense of fair use.  Further, on the basis of the facts alleged by Plaintiff and the arguments above, it is apparent that each factor of the fair use analysis either favors Plaintiff or, at a minimum, raises sufficient issues of fact to warrant the denial of Rothman's Motion.  Peteski further respectfully requests that the Court grant it any and all further relief to which Peteski is entitled.

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                    PAGE 30

18751410v.14

Respectfully submitted,

By:  */s/ Charles L. "Chip" Babcock*
Charles L. "Chip" Babcock, Lead Attorney
Texas State Bar No. 01479500
Nancy W. Hamilton
Texas State Bar No. 11587925
Carl C. Butzer
Texas State Bar No. 03545900
JACKSON WALKER L.L.P.
2323 Ross Ave.
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 - Fax
Email: cbabcock@jw.com
Email: nhamilton@jw.com
Email: cbutzer@jw.com


David Folsom
Texas State Bar No. 07210800
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250 - Telephone
(214) 661-6886 – Facsimile
Email: dfolsom@jw.com

George L. McWilliams
Texas State Bar No. 13877000
LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
Post Office Box 58
Texarkana, Texas-Arkansas 75504
(870) 772-2055 - Telephone
(870) 772-0513 – Facsimile
Email: glmlawoffice@gmail.com

**ATTORNEYS FOR PLAINTIFF
PETESKI PRODUCTIONS, INC.**

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                        PAGE 31

18751410v.14

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July 2017, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system which will generate an electronic notice of filing to the parties registered to the Court's CM/ECF system.

*/s/ Charles L. "Chip" Babcock*
Charles L. "Chip" Babcock

18751410

PLAINTIFF'S RESPONSE TO DEFENDANT LEAH ROTHMAN'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S FAIR USE AFFIRMATIVE DEFENSE                                                              PAGE 32

18751410v.14