IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| PETESKI PRODUCTIONS, INC., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 5:17-CV-00122-JRG |
| v. | § § § | |
| LEAH ROTHMAN, JOHN DOE, | § § § | |
| Defendants. | § § | |

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER FOR CONVENIENCE**

Before the Court is Defendant's Motion to Transfer Venue (Dkt. No. 11) and the Parties' subsequent briefing, as ordered by the Court (Dkt. Nos. 67, 71, 72). Having considered the Motion, the Parties briefing and the relevant authorities, the finds that that the Motion should be **DENIED** for the reasons discussed below.

**I.     PROCEDURAL BACKGROUND**

Plaintiff Peteski Productions, Inc. ("Peteski") filed suit against Defendant Leah Rothman ("Rothman") and unnamed Defendant John Doe on June 15, 2017 (Dkt. No. 1). In her first defensive action, Rothman filed an omnibus Motion to Dismiss or for Summary Judgment (Dkt. No. 10). In that Motion, Rothman moved for dismissal for lack of personal jurisdiction, improper venue, and failure to state a claim. The failure to state a claim was based on an asserted fair use defense. (*Id*.)

Simultaneously, Rothman filed the instant Motion (Dkt. No. 11), seeking a transfer for convenience under 28 U.S.C. § 1404(a).

Following the filing of these motions, Rothman sought a stay of the action except for the issue of her asserted fair use defense. (Dkt. No. 17). The Court delayed addressing the Defendant's Motion to Transfer Venue under 28 U.S.C. § 1404(a), while it turned its attention to the issue of fair use. After ruling that the fair use defense did not apply in this case (Dkt. No. 44), the Court lifted the stay and ordered additional briefing on various unresolved matters. (Dkt. Nos. 56 and 62.) Following disposition of Rothman's fair use defense, (Dkt. No. 44), Rothman made an Offer of Judgment to Peteski under Fed. R. Civ. P. 68. This Offer was not accepted by Peteski. Following a Telephonic Status Conference with the Parties, the Court issued an Order (Dkt. No. 56) lifting the previously granted stay (Dkt. No. 26), which had been entered at Rothman's request (Dkt. No. 17) as to her Motion to Dismiss for Lack of Jurisdiction and Rothman's Motion to Dismiss for Improper Venue (Dkt. No. 10). The Court also ordered briefing by the Parties focusing solely on the issue of whether the Defendant had waived these defenses and/or consented to the Court's jurisdiction and venue. Following this, the Court further ordered the Parties resume briefing of the issue of transferring the case for convenience under § 1404(a). (Dkt. No. 62).

The Court has now denied Rothman's Motion to Dismiss in its entirety. (Dkt. No. 66). The sole remaining issue before the Court is Rothman's Motion to Transfer for Convenience.

## II.  DISCUSSION

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26, 27 (1960)).

2

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* Absent such a showing, the plaintiff's choice is to be respected.

II.A.   § 1404(a)'s First Inquiry

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203.  The Parties agree,[1] and the Court concurs, that this threshold inquiry is satisfied.  Accordingly, the Court proceeds to a substantive examination of the *Volkswagen* factors.

II.B.   § 1404(a)'s *Volkswagen* Factors

The parties agree, and the Court concurs, that two public interest factors, familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws are neutral in this analysis.[2]  The Court proceeds to address the disputed factors.

II.B.i. Relative Ease of Access to Proof

Rothman submits that "[t]he evidence in this case will be primarily in the form of witness testimony."  (Dkt. No. 11 at 7).  Rothman identifies three witnesses who reside in the Central District of California—Rothman, Dr. McGraw, and Mr. De Michele.  (*Id.*)  Rothman also submits that the original recording of the work is believed to be in central California and that "Peteski's principal place of business is there" as well.  (*Id.*)

Peteski responds that "This factor relates to the distance that documents, or other evidence must be transported from their existing location to the trial venue."  (Dkt. No. 67 at 9 (citing *Volkswagen II*, 545 F.3d at 316)).  Peteski submits that Rothman has "failed to identify sources of proof with enough specificity that [this] court can determine whether transfer will increase the

---

[1] (Dkt. No. 11 at 6 ("Peteski could have filed the complaint in the USDC for the Central District because Rothman lives in Los Angeles and thus resides in that district."); Dkt. No. 67 at 9 ("Peteski agrees with Rothman, that suit could have been brought in the Central District of California.")).
[2] (Dkt. No. 11 at 12 ("Courts in both district are equally capable of applying federal copyright law. . . . Because federal copyright law applies, no conflict of laws is anticipated."); Dkt. No. 67 at 15 ("Neither party argues that either this Court or the Central District of California lacks familiarity with copyright law . . . .The claims are governed by federal law, and both courts are capable of applying that law to infringement claims.")).

convenience of the parties." (*Id.* (quoting *J2 Glob. Commc'ns Inc. v. Protus IP Sols., Inc.*, No. 6:08-CV-211, 2009 U.S. Dist. LEXIS 13210, at *7 (E.D. Tex. Feb. 19, 2009)). Rothman does not identify any documents or other sources of proof beyond witness testimony for the Court to consider. (Dkt. No. 71).

Accordingly, since the only non-witness source of proof which the Court might consider is the original recording of the work, this factor might typically favor transfer. However, in this case the Court already has, on deposit in the Texarkana division, (Dkt. No. 41 ("Video is being placed in Texarkana Clerks vault"), a copy of the infringing work. Consequently, this factor is neutral.

### II.B.ii.   The Availability of Compulsory Process

Rothman submits that Mr. De Michele and Dr. McGraw are beyond the Eastern District's absolute subpoena power, but that the Central District of California enjoys such power over both Mr. De Michele and Dr. McGraw. (Dkt. No. 11 at 8–9). Accordingly, Rothman urges that this factor favors transfer.

However, as Peteski points out, and based on supporting declarations, "Mr. De Michele and Dr. McGraw are officers of Peteski and are witnesses who are willing to testify at trial in Texarkana," and "there is no issue with [Rothman] appearing at trial in Texarkana," as she has stated she will testify at trial. (Dkt. No. 67 at 10 (citing De Michele Declaration at ¶¶ 3-4; McGraw Declaration at ¶¶ 3-4)). Accordingly, Peteski argues, this factor is neutral as to these witnesses.

Peteski submits, further, that "Scott Madsen who was the President of Peteski for over a decade, including the dates when Peteski's infringed video was filmed and when Rothman made her infringing recording," "is subject to this Court's subpoena power" and that "[t]he Central

5

District of California has no power to compel Mr. Madsen to appear at trial." (Dkt. No. 67 at 10–11). Strikingly, Rothman fails to address Mr. Masden, (Dkt. No. 71 at 2).

As Mr. De Michele and Dr. McGraw are willing witnesses, they are excluded from this factor's analysis. Rothman is a party witness, and is also excluded. Mr. Masden is a non-party witness[3] and subject to this Court's subpoena power but not subject to the Central District's subpoena power. There are no other witnesses identified. Accordingly, this factor weighs against transfer.

### II.B.iii. The Cost of Witness Attendance

Rothman submits that "[t]he known witnesses all work and reside in Central California," and that "Peteski's principle place of business is in Los Angeles." (Dkt. No. 11 at 10). Because of this, Rothman argues, "all of these witnesses will have to travel over 1600 miles to attend trial" making "Central California . . . more convenient for the known witnesses." (*Id*.)

Peteski correctly notes that "[a]lthough this factor considers the convenience of both party and non-party witnesses, the court affords more importance to the convenience of non-party witnesses." (Dkt. No. 67 at 11 (citing *MacroPoint, LLC v. Ruiz Food Prods.*, No. 6:16-cv-01133-RWS-KNM, 2017 U.S. Dist. LEXIS 138985, at *8 (E.D. Tex. Aug. 29, 2017)). Peteski argues that since Rothman, Mr. De Michele, and Dr. McGraw are all party witnesses, their inconvenience, if any, should be afforded less importance. (Dkt. No. 67 at 11). On the other hand, Peteski argues, Mr. Masden would have to travel to California, which would be a significant cost to him. (*Id*.)

Peteski also submits that Mr. De Michele and Dr. McGraw are both willing to travel to Texarkana and that this would not be inconvenient for them. (*Id*. ("De Michele and McGraw have

---

[3] While Mr. Madsen is the "former President and currently a consultant of Peteski Productions, Inc.," (Madsen Decl. ¶ 1), and was the President of Peteski "when Peteski's infringed video (which is the subject of this lawsuit) was filmed, and in 2015, when Leah Rothman made her infringing recording," (*Id*. at ¶ 5), there is no assertion that Mr. Madsen is a current employee of Peteski such that he should be considered to be a party witness.

declared that there would be no inconvenience for them to testify at trial in Texarkana, especially since Peteski has an office in that city and that they will appear at trial if necessary." (citing De Michele Declaration at ¶¶ 3-4; McGraw Declaration at ¶¶ 3-4)). Rothman argues that regardless of the willingness of Mr. De Michele and Dr. McGraw to appear, it is still more convenient for them to appear in the Central District of California.

In light of the clear willingness of Mr. De Michele and Dr. McGraw to appear in Texas and the absence of any willingness for Mr. Madsen to appear in California, this factor tilts against transfer, but only slightly.

### II.B.iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

Rothman submitted, originally, that a transfer would not present any delay or other prejudice to the case or the Plaintiff, asserting that the case is "in its infancy, discovery has not even begun, [and] no trial date has been set". (Dkt. No. 11 at 10–11). Peteski argues that, to the contrary, "evidence of delay and prejudice here is . . . clear and convincing." (Dkt. No. 67 at 12). Peteski points to the fact that there has already been a "delay caused exclusively by Rothman's emergency request to the Court to stay her Motion to Transfer, in favor of her motion for summary judgment," which precipitated "a briefing schedule" and "a hearing on her motion for summary judgment" which "resulted in the Court's summary judgment ruling on the most controversial issue in the case," the fair use defense. (*Id*. at 12–13). And, only "[n]ow that the Court has ruled against her (and in favor of Peteski) on this pivotal issue, Rothman has asked the Court to take up her § 1404(a) Motion." (*Id*. at 13). Peteski also cites "the court's familiarity with the parties and claims," (*id.*), as supporting its position as "[i]t [is] incumbent upon [the defendant] to actively and promptly pursue its motion to transfer venue before the district court invested considerable time

7

and attention on," substantive issues. *In re VTech Communs., Inc.*, 2010 U.S. App. LEXIS 372 (Fed. Cir. Jan. 6, 2010).

While Rothman protests as to the effect of transfer on the issue of judicial economy, her arguments are not persuasive. Discovery has begun, although it has been stayed at Rothman's Request. A trial date has been set, and is now only slightly more than four months away. (Dkt. No. 28, Dkt. No. 30). Rothman submits, however, that the case is "not ready for trial." (Dkt. No.71 at 3). The analysis cannot be that transfer under this factor is only disfavored where a case is completely ready for trial. Given the limited nature of the trial,[4] discovery will be limited, preparation brief, and the trial short. Transfer would also serve to delay the approaching trial date. Indeed, a transfer to the Central District of California would almost assuredly delay resolution of this case by many months, if not years. Taking all of the circumstances identified above into consideration, the Court finds that a transfer would be contrary to the interests of judicial economy and efficiency. This factor disfavors transfer.

### II.B.v.  The Administrative Difficulties Flowing From Court Congestion

Rothman submits that "[t]he most recent Judicial Caseload statistics show that the median time to bring a case to trial in Central California is 18.3 months, whereas it is 24.8 months in this District.; more than a six-month difference," making "Central California a more favorable forum since it is likely to dispose of the case more quickly than this District." (Dkt. No. 11 at 12).

Peteski submits that "[t]he reality in this case is far different than the statistics Rothman relies on," "and if her statistics about the Central District of California are even close to being accurate, a trial in this Court is sure to occur more than one year earlier than trial in the Central

---

[4] The trial will address the issue of damages and possible injunctive relief given the Court's finding of no fair use defense and Rothman's admission to infringement.

District of California" since "[t]his case is set for a jury trial in this Court less than 5 months from now, on March 19, 2018." (Dkt. No. 67 at 14).

Considering the totality of the circumstances, including both the statistics submitted by Rothman and the current state of the case as submitted by Peteski, as well as the unavoidable delays a new case transferred into the Central District of California would face, the Court concludes that this factor disfavors transfer.

### II.B.vi. The Local Interest in Having Localized Interests Decided at Home

Rothman submits that "both parties' witnesses" are located in the Central District of California and alleges that Peteski's principle place of business is also in that District. (Dkt. No. 11 at 11; Dkt. No. 71 at 4). Peteski submits that it is a Texas corporation with its principle place of business in Texarkana. (Dkt. No. 72 at 2; *id.* Ex. A at 2).[5]

Having considered the submissions, the Court finds that this factor favors transfer, but not significantly.

### III. CONCLUSION

Having considered the factors of the second *Volkswagen* inquiry,[6] and in light of the Defendant's "significant burden" to demonstrate that the Central District of California is "clearly more convenient" than this District, the Court holds that the Defendant has not met her burden to

---

[5] The Court notes the disagreement between the parties as to where Peteski's principle place of business is located. Having reviewed the submissions, especially in light of Peteski's amended November 2016 Discovery Responses, the Court finds the amended response resolves the difference in representation of the principle place of business between the action before the Court and the action pending before the California state court. (Dkt. No. 71 at 5 n. 4 (Rothman identifying "a completely different representation in Rothman's state court action" as to Peteski's principle place of business"); Dkt. No. 72 at 2 ("the November 2016 Discovery Responses . . . were amended in the California case" and now state that "Peteski is a Texas corporation with its principal place of business at 3001 Richmond Rd., Suite B, Texarkana, Texas 75503…") (citing Dkt. No. 72 Ex. A at 2)). Accordingly, the Court finds that Peteski's principle place of business is in Texarkana.

[6] Factor summary: (i) minorly in favor of transfer or neutral; (ii) against transfer; (iii) against transfer, but only slightly; (iv) disfavors transfer; (v) disfavors transfer; (vi) favors transfer, but not significantly; (vii) neutral (agreed); (viii) neutral (agreed).

show that transfer would be clearly more convenient. Accordingly, the Defendant's Motion to Transfer for Convenience pursuant to § 1404(a) (Dkt. No. 11) is hereby **DENIED**.

**So ORDERED and SIGNED this 13th day of November, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE